# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | Crim. No. 03-288 |
| | ) | (Civ. No. 09-1631) |
| MICHAEL T. BROWN, | ) | |
| | ) | |
| Petitioner. | ) | |

# OPINION

Before the Court is Petitioner Michael Brown's *pro se* Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 filed at Criminal No. 03-288 (Doc. 93). The government has filed a Response to the Motion (Doc. 102). For the reasons stated below we will deny the motion.

## I. Background

A federal grand jury indicted the Defendant, Michael Brown, with unlawful possession of firearms by a convicted felon in violation of 18 U.S.C. § 922(g)(1). On October 31, 2005, Mr. Brown entered a guilty plea pursuant to a written plea agreement that included a waiver of collateral rights provision. The Presentence Investigative Report ("PSR") indicated that Mr. Brown was an Armed Career Criminal subject to a mandatory minimum sentence of 180 months. Based on an offense level of 31 and a criminal history category of Roman numeral V, Mr. Brown's guideline sentencing range was determined to be 180 to 210 months' imprisonment.

On June 14, 2006, Mr. Brown was sentenced to 156 months imprisonment to be followed by five years supervised release. Mr. Brown was sentenced to less than the 180-month minimum because the government filed a motion pursuant to § 5K1.1 of the Guidelines, which we granted.

Mr. Brown appealed his sentence, and on February 26, 2009, the United States Court of Appeals for the Third Circuit vacated the judgment of sentence and remanded the case for

resentencing consistent with the United States Supreme Court's opinion in <u>Chambers v. United States</u>, 129 S.Ct. 687 (2009).

A resentencing hearing was held on June 3, 2009. Mr. Brown's total offense level was recalculated as 25 (instead of 31) in light of <u>Chambers</u>. Over Mr. Brown's objections the Court once again found that Mr. Brown was an Armed Career Criminal with a criminal history category of Roman numeral V. The applicable advisory guideline range at resentencing was 100 to 120 months' imprisonment. Mr. Brown was resentenced to a term of imprisonment of 100 months to be followed by three years supervised release.

Immediately after the conclusion of the resentencing hearing, Mr. Brown's defense counsel, Assistant Federal Public Defender W. Penn Hackney, contacted the Court by telephone, and asked to be heard with respect to an additional objection not previously argued. Defense counsel explained that his objection was related to Mr. Brown's prior conviction for indecent assault. The Court orally agreed to consider defense counsel's argument and further agreed not to file the judgment of conviction until the parties could brief the newly raised objection.

On June 8, 2009, Mr. Hackney filed a Motion for Reconsideration of Sentence in which he argued that Mr. Brown's prior indecent assault conviction in violation of 18 Pa. C.S.A. § 3126(a)(1) as interpreted by <u>Begay v. United States</u>, 128 S.Ct. 1581 (2008), is not a "crime of violence" under U.S.S.G. § 4B1.2(a). Therefore, he argued that Mr. Brown's indecent assault conviction should not have been used to enhance his base offense level pursuant to U.S.S.G. § 2K2.1(a). We denied Mr. Brown's Motion for Reconsideration of Sentence finding that we lacked jurisdiction to consider the motion because more than seven days had passed since the oral announcement of the sentence. <u>United States v. Higgs</u>, 504 F. 3d 456 (3d Cir. 2007), Fed. R. Crim. P. 35(a).

2

*Motion to Vacate*

On December 11, 2009, Mr. Brown filed a *pro se* Motion to Vacate Sentence under 28 U.S.C. § 2255 raising the following claim for Ineffective Assistance of Counsel. Mr. Brown alleges his counsel erred in failing to timely object to the Court's use of Defendant's indecent assault conviction as a "prior crime of violence" under the Guidelines depriving him of his right to competent counsel under the Sixth Amendment to the United States Constitution. Mr. Brown further argues that his total offense level should be 21 instead of 25, resulting in an advisory guideline range of imprisonment of 70 to 87 months, instead of 100 to 125 months.

## II. Standard of Review under 28 U.S.C. § 2255

Section 2255 of Title 28 of the United States Code provides a means of collaterally attacking a sentence imposed after a conviction. United States v. Cannistraro, 734 F. Supp. 1110, 1119 (D. N.J. 1989), aff'd, 919 F.2d 133 and 919 F.2d 137 (3d Cir. 1990), cert. denied, 500 U.S. 916. Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Relief under this provision is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." United States v. Gordon, 979 F. Supp. 337, 339 (E.D. Pa. 1997), citing Hill v. United States, 368 U.S. 424, 428 (1962).

The Court must consider the motion together with all the files, records, transcripts and correspondence relating to the judgment under attack. See 28 U.S.C. § 2255, Rule 4(b). A

district court considering a § 2255 motion "'must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record,'" United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005), quoting Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989), and it "abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief." Booth, 432 F.3d at 546, citing United States v. McCoy, 410 F.3d 124, 134 (3d Cir. 2005). However, the final disposition of a § 2255 motion lies with the discretion of the trial judge, See Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985), and a district court may summarily dismiss a § 2255 motion where the motion, files and records "show conclusively that the movant is not entitled to relief." United States v. Mason, 2008 WL 938784, 1 (E.D. Pa. 2008), citing Forte, 865 F.2d at 62.

### *Evidentiary Hearing*

When a Motion is made under 28 U.S.C. § 2255, the question of whether to order a hearing is committed to the sound discretion of the district court. In exercising that discretion, the court must accept the truth of the Petitioner's factual allegations unless they are clearly frivolous on the basis of the existing record. United States v. Day, 969 F. 2d 39, 41-42 (3d Cir. 1992). Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the petitioner is not entitled to relief. Id.; Gordon, 979 F. Supp at 339. We find no need for an evidentiary hearing as the record conclusively establishes that Mr. Brown is not entitled to the relief sought in the petition. 28 U.S.C. § 2255.

### III. Discussion

Mr. Brown argues that his counsel was ineffective because he did not timely challenge the Court's use of Mr. Brown's prior indecent assault conviction as a "crime of violence." Because of this failure on counsel's part, the Court never made a ruling on the issue. Mr. Brown claims that had he received a ruling on the merits it would have resulted in a finding that his prior conviction was not a "crime of violence" and his total offense level would have been 21 instead of 25.

Initially, however, we must address the fact that Mr. Brown agreed in his Plea Agreement to waive his right to file a motion to vacate. If we find that Mr. Brown knowingly and voluntarily agreed to waive his right to file a § 2255 petition, and the enforcement of the waiver does not work a miscarriage of justice, then we must enforce the waiver and dismiss the motion.

As discussed below, we find that Mr. Brown's waiver of his right to file a motion to vacate is enforceable. In determining whether enforcement of the waiver works a miscarriage of justice, we necessarily address the substance of Mr. Brown's claim that his prior conviction is not a "crime of violence." We do this in the context of analyzing Mr. Brown's claim that his counsel was ineffective. Assuming that counsel's failure to make a timely objection fell below an objective standard of reasonableness, we conclude that Mr. Brown was not prejudiced by the deficient performance because even if counsel had timely objected, we would have denied the objection.

### A. Waiver of Collateral Rights

"A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." United States v. Khattak, 273 F.3d 557, 561 (3d Cir. 2001), citing United States v. Mezzanatto, 513 U.S. 196, 201 (1995). Such waivers are enforceable "provided that they are entered into knowingly and voluntarily and their

5

enforcement does not work a miscarriage of justice." United States v. Mabry, 536 F.3d 231, 237 (3d Cir. 2008), citing Khattak, 273 F.3d at 561.

We have "an independent obligation to conduct an evaluation of the validity of a collateral waiver." Mabry, 536 F.3d at 238. Specifically, we must examine the "(1) knowing and voluntary nature, based on what occurred and what defendant contends, and (2) whether enforcement would work a miscarriage of justice." Mabry, 536 F.3d at 237. "Whereas a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." Id. at 237-238, citing Khattak, 273 F.3d at 563.

**1. Knowing and Voluntary Nature of the Waiver**

With regard to whether the waiver was knowing and voluntary we must, at a minimum, "review[] the terms of the plea agreement and colloquy and address[] their sufficiency." Mabry, 536 F.3d at 239.

Pursuant to his Plea Agreement, Mr. Brown agreed to waive his right to take a direct appeal, except that he was permitted to take a direct appeal only if the United States appeals from the sentence, or if the sentence exceeds the statutory limits or unreasonably exceeds the guideline range. (Plea Agreement, ¶ 9.) Mr. Brown also agreed to waive his right to file a motion to vacate sentence under 28 U.S.C. § 2255 attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence. (Plea Agreement, ¶ 9.) Mr. Brown signed the Plea Agreement acknowledging that he understood the terms of the Agreement. We find the terms of the Plea Agreement to be sufficient and clear with regard to the waiver of collateral rights.

The knowing and voluntary nature of Mr. Brown's waiver was reinforced during the plea colloquy. Mr. Brown was determined to be competent to plead. (Transcript of Plea Hearing, October 31, 2005, at 6.) The Court explained to him what his rights would be if he went to trial. (Id. at 7-8.) Count One of the indictment was read to Mr. Brown, as well as what the government would have to prove at trial with respect to the charge of possession of a firearm by a convicted felon. (Id. at 10-12.)

We also explained the penalties Mr. Brown would be subject to. Possession of a firearm by a convicted felon calls for a term of imprisonment of not more than ten years, a fine of $250,000, a special assessment of $100, and a term of three years supervised release. However, if it is determined that the defendant has three previous convictions for a violent felony or a serious drug offense or both, 18 U.S.C. § 924(e) mandates a term of imprisonment of not less than 15 years to a maximum of life, a $250,000 fine, a $100 special assessment, and a term of five years supervised release. (Id. at 12-13.) When we asked Mr. Brown if he understood the penalties, he stated, "Yes, Your Honor." (Id. at 13.)

The terms of the plea agreement were explained to Mr. Brown. (Id. at 16-18.) In particular, it was explained to Mr. Brown that the plea agreement included the waiver of the right to file a motion to vacate sentence under 28 U.S.C. § 2255. (Id. at 17.) We asked Mr. Brown if there was anything about the plea agreement he did not understand to which he responded, "No." (Id. at 18-19.) Mr. Brown was further asked if "any out-of-court promises, representations, or agreement had been made which require you to respond untruthfully to any of my questions? For instance, has anyone told you to tell me that no promise of leniency was made when in fact a promise was so made?" (Id. at 20.) Mr. Brown responded by answering, "No." (Id.) We further asked, "Do you understand that no one can make any promises for me as to how I will

7

dispose of this case? Do you understand that nobody can make promises for me?" (Id. at 21.) Mr. Brown responded, "Right. Right Your Honor." (Id.)

Federal Rule of Criminal Procedure 11(b)(1)(N) requires that before accepting a plea of guilty, the district court must "inform the defendant of, and determine that the defendant understands…the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N). For the purposes of the present analysis, we find that Mr. Brown's guilty plea was knowing and voluntary and that specifically, his waiver of his collateral rights was knowing and voluntary.

### 2. Miscarriage of Justice

We next address whether enforcement of the waiver "would work a miscarriage of justice in this case." Mabry, 536 F.3d at 239. We are to use a "common sense approach" and "look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver." Id. at 242-243. There is no identified list of specific circumstances to consider before invalidating a waiver as involving a miscarriage of justice. Id. However, the Third Circuit has "endorsed the methodology of the Court of Appeals for the First Circuit," and instructed that we should consider "'the clarity of the error, its gravity, its character (*e.g.*, whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result…'" Id. at 242-243, quoting United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001).

As stated previously, in order to determine if Mr. Brown suffered a miscarriage of justice, we must address whether his counsel was ineffective. The mere allegation of ineffectiveness of counsel will not automatically invalidate a knowing and voluntary waiver of a collateral attack.

8

Mabry, 536 F.3d at 243. We thus turn now to Mr. Brown's claim that his counsel was ineffective.

## B. Ineffective Assistance of Counsel

### 1. Applicable Law

"A claim of ineffective assistance requires a defendant to establish that counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced the defendant." McAleese v. Mazurkiewicz, 1 F.3d 159, 166 (3d Cir. 1993), citing Strickland v. Washington, 466 U.S. 668, 687-688 (1984). "To establish prejudice, a defendant must demonstrate that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Weeks v. Snyder, 219 F.3d 245, 257 (3d Cir. 2000), quoting Strickland, 466 U.S. at 694.

### 2. Analysis

Mr. Brown alleges that his federal public defender, W. Penn Hackney, was ineffective for failing to timely object to the Probation Office's determination that Mr. Brown's 2001 indecent assault conviction was a "prior crime of violence" pursuant to U.S.S.G. § 4B1.2(a). Specifically, Mr. Brown alleges as follows:

> [A]ssigned counsel['s] performance was deficient when he failed to object to the court's use of indecent assault as "prior crime of violence" under the guidelines. Petitioner['s] total offense should have been a level (21) and Criminal History Category of V, thus, guideline sentencing range of 70 to 87 months imprisonment, instead of the additional 13 to 30 months that the court[s] imposed; as counsel's untimely objection deprived movant of his right to competent counsel under Sixth Amendment.

(Motion to Vacate, at 4.)

We will assume that counsel's failure to raise a timely objection fell below an objective standard of reasonableness, and focus our discussion on whether this deficient performance prejudiced the defendant. As explained previously, resolution of the ineffectiveness claim

9

requires that we address the substance of Mr. Brown's claim that his prior conviction was improperly deemed to be a "crime of violence." In the context of a claim of ineffectiveness of counsel, if Mr. Brown's prior conviction was properly determined to be a "crime of violence" then Mr. Brown was not prejudiced by counsel's failure to timely object. Accordingly, we turn now to a discussion of whether the prior conviction is a "crime of violence" under section 4B1.2(a).

## C. Prior Conviction as a "Crime of Violence" under Section 4B1.2(a)

### 1. Mr. Brown's 2001 Indecent Assault Conviction

In 2001, Mr. Brown pleaded guilty in the Court of Common Pleas of Allegheny County to indecent assault in violation of 18 Pa.C.S.A. § 3126(a)(1). At the time of Mr. Brown's conviction, section 3126(a)(1) stated as follows:

> **(a) Offense defined.**--A person who has indecent contact with the complainant or causes the complainant to have indecent contact with the person is guilty of indecent assault if:
>
> **(1)** the person does so without the complainant's consent[.]

18 Pa.C.S.A. § 3126(a)(1) (2001). "Indecent contact" is defined by Pennsylvania Statute as "touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." 18 Pa.C.S.A. § 3101.

The charging document filed at CC No. 200113237 tracks the language of the statute and describes the offense as follows:

> The actor had indecent contact with [the Complainant], or caused [the Complainant], to have indecent contact with actor without the consent of [the Complainant], in violation of Section 3126(a)(1) . . . .

The Presentence Report set forth the factual description of the offense as follows:

> [The Complainant] reported that on August 21, 2001, she had been locked out of a shelter where she had been staying and had met the defendant on Fifth Avenue. Although she was only vaguely acquainted with him, the defendant offered her a place to stay. When she hesitated, the defendant reportedly told her not to worry because she would not have to do anything that she did not want to do. The defendant subsequently brought her to an apartment...and then led [the Complainant] to a bedroom and she began putting away her belongings. The defendant asked [the Complainant] for sex, she declined. The defendant attempted to kiss her face and neck and was again rebuffed by [the Complainant]. During the course of the offense, the defendant reportedly struck [the Complainant] in the face with his hand and said, "You know what you came here for." The defendant also grabbed her neck, grabbed her buttocks, and attempted to spread her legs apart. [The Complainant] indicated that she repeatedly said no and told the defendant to get off her as he rubbed his erect penis onto her legs and waist. After she successfully pushed the defendant away, [the Complainant] started gathering her belongings. The defendant began throwing [the Complainant's] belongings around .... [The Complainant] subsequently returned to the shelter and called the police from a pay phone...

(Presentence Report, at ¶ 30.)

### 2. "Crime of Violence" Pursuant to Section 4B1.2(a)

Mr. Brown's prior indecent assault conviction was deemed to be a "crime of violence" pursuant to section 4B1.2(a) of the Guidelines, which states as follows:

> **(a)** The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> **(1)** has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> **(2)** is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). In addition, the commentary to section 4B1.2 states that the definition of "crime of violence" includes, among other listed examples, "forcible sex offenses." U.S.S.G. § 4B1.2, cmt. 1.

Mr. Brown's prior conviction does not fall within subsection (1) of 4B1.2(a) because the indecent assault statute he was convicted under, 18 Pa.C.S.A. § 3126(a)(1), does not have as an element "the use, attempted use, or threatened use of physical force against the person of

11

another." In addition, "indecent assault" is not one of the enumerated offenses under subsection (2) of 4B1.2(a). Consequently, Mr. Brown's prior indecent assault conviction qualifies as a "crime of violence" under 4B1.2(a) because it falls under the residual clause as an offense that "presents a serious potential risk of physical injury to another."

Mr. Brown argues that his prior indecent assault conviction is not a "crime of violence" under section 4B1.2(a) as interpreted by the United States Supreme Court in Begay v. United States, 128 S.Ct. 1581 (2009). In Begay, the Supreme Court ruled that for an offense to be counted as a "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii), the offense must be considered generically and categorically in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion. Therefore, Mr. Brown argues that his indecent assault conviction is not a "crime of violence" because the offense is not "like" the enumerated offenses of 4B1.2(a)(2), and because the offense does not necessarily involve "purposeful, violent, and aggressive conduct." See Begay, at 1584-87.

### 3. Analysis

In Begay, the Supreme Court addressed whether an offense is to be counted as a "violent felony" under the Armed Career Criminal Act. Here, we are concerned with the definition of "crime of violence" under section 4B1.2(a) of the Sentencing Guidelines. These definitions are identical in all relevant respects and thus the Supreme Court's interpretation of the definition in Begay applies equally to our consideration of the definition in section 4B1.2(a). United States v. Polk, 577 F.3d 515, 519 n.5 (3d Cir. 2009); United States v. Hopkins, 577 F.3d 507, 511 (3d Cir. 2009).

In Begay, the Supreme Court held that a New Mexico Driving Under the Influence statute is not a "violent felony" within the meaning of the Armed Career Criminal Act. 128 S.Ct. at 1588. In making its determination the Supreme Court reaffirmed its "categorical approach" to crimes of violence and considered "the offense generically, that is to say, . . . in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." Id. at 1584 (citing Taylor v. United States, 45 U.S. 575, 602, 110 S.Ct. 2143 (1990), and noting that Taylor adopted this "categorical approach"). As a preliminary matter the Begay Court found, as we do here, that the prior crime does not have as an element "the use, attempted use, or threatened use of physical force against the person of another." 128 S.Ct. at 1584. The Court also agreed that Driving Under the Influence "presents a serious potential risk of physical injury to another," but found that the crime was "too unlike" the listed examples to fall within the residual clause. Id.

According to Begay, the residual clause covers only crimes that present "a serious potential risk of physical injury to another" that are similar to the enumerated examples of "burglary of a dwelling, arson, extortion, or involves use of explosives." Id. at 1584-1585. More specifically, the Supreme Court stated that the listed examples limit the crimes that the residual clause "covers to crimes that are roughly similar, in kind as well as degree of risk posed, to the examples themselves." Id. at 1585 (citations omitted). The Supreme Court further explained that the enumerated crimes all "typically involve purposeful, violent, and aggressive conduct" whereas Driving Under the Influence does not. Id. at 1586 (internal quotations and citations omitted). Thus, the Court held that a prior record of driving under the influence "differs from a prior record of violent and aggressive crimes committed intentionally . . . ." Id. at 1588.

13

Prior to Begay, the Court of Appeals for the Third Circuit held that a conviction for indecent assault qualifies as a "crime of violence." United States v. Siegel, 477 F.3d 87 (3d Cir. 2007). In Siegel, the Court employed the "categorical approach" and began by examining the indecent assault statute only. Id. at 91. The Court's examination of the entire statute showed that it encompassed two categories of indecent assault centering on the victim's ability to consent to the conduct. Id. at 91-92. The first category involves indecent contact between the perpetrator and victim where the victim, "although capable of consenting to the conduct at issue, did not." Id. at 92; 18 U.S.C. § 3126(a)(1)-(3). The second category involves indecent contact in cases where the victim was incapable of consenting. 477 F.3d at 92; 18 U.S.C. § 3126(a)(4)-(8). The Siegel Court concluded that the disjunctive nature of the statute "invites inquiry into the underlying facts of the case because [the Court was] unable to determine from the face of the statute which crime or crimes Siegel pleaded guilty to." 477 F.3d at 92.

The Court was also unable to determine which crime or crimes Siegel plead to by examining the charging document itself because that document merely recited the statute verbatim. Id. at 92. The plea colloquy was not available so it could not be examined to determine what Siegel pleaded guilty to. Id. at 92-93. Siegel conceded that two of the eight provisions of the indecent assault statute do qualify as "forcible sexual offenses"; namely subsections (2) and (3) which require forcible compulsion, and threat of forcible compulsion, respectively. However, he maintained that it was impossible for the District Court, and presumably the Appeals Court, to determine that Siegel's indecent assault conviction fell within one of the two "forcible sexual offense" provisions of the statute. Thus, Siegel necessarily argued that the remaining six provisions of section 3126 do not involve the use of force and cannot be considered "crimes of violence." The Court of Appeals rejected that argument.

14

Although the Court could not determine which provision of the statute Siegel pleaded guilty to, the Court was able to rely on the description of the offense conduct in the PSR to which Siegel did not object that showed that Siegel engaged in forcible conduct in committing indecent assault. 477 F.3d at 93. Therefore, the Court concluded that indecent assault was a "crime of violence."

### a. The Categorical Approach Under Begay

In accordance with Begay we begin with the "categorical approach" and consider "the offense generically, that is to say, . . . in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." 128 S.Ct. at 1584. In contrast to Siegel, we know which subsection of the indecent assault statute Mr. Brown pleaded guilty to: 3126(a)(1). That statute, at the time Mr. Brown pleaded guilty, stated as follows:

> **(a) Offense defined.**--A person who has indecent contact with the complainant or causes the complainant to have indecent contact with the person is guilty of indecent assault if:
>
> **(1)** the person does so without the complainant's consent[.]

18 Pa.C.S.A. § 3126(a)(1) (2001). This subsection of the statute describes two distinct offenses, either of which constitute "indecent assault": "indecent contact, [or] causing the victim to have indecent contact with the offender" to which the victim did not consent. Siegel, 477 F.3d at 91. Reviewing the statute we conclude that "indecent assault" as written presents "a serious potential risk of physical injury to another."

"Indecent contact" is defined as "touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." 18 Pa.C.S.A. § 3101. When indecent contact is committed without the victim's consent it necessarily carries a

15

substantial risk that the perpetrator will use physical force against the victim in order to overcome the victim's unwillingness to consent. In addition, in order to accomplish "indecent contact" the perpetrator must be in close proximity to the victim thereby increasing the likelihood of physical injury when the victim does not consent to the unwanted contact.

Having determined that "indecent assault" presents a serious risk of physical injury to another, we must go on to determine whether indecent assault is "roughly similar, in kind as well as degree of risk posed, to the examples" enumerated in 4B1.2(a). Begay, 128 S.Ct. at 1585. For the reasons explained above, we find that "indecent assault" as set forth in section 3126(a)(1) is "roughly similar" to the crimes of burglary or extortion. Indecent assault, like burglary and extortion, necessarily "typically" involve "purposeful, violent, and aggressive conduct." 128 S.Ct. at 1586. The inherent risk of physical force to overcome the victim's unwillingness to consent and the required close physical proximity to commit the offense leads to the conclusion that Mr. Brown's prior conviction qualifies as a "forcible sex offense" as identified in the commentary to section 4B1.2. U.S.S.G. § 4B1.2, cmt. 1 (definition of "crime of violence" includes, among other listed examples, "forcible sex offenses.") Therefore, we conclude that "indecent assault" as set forth in 18 Pa.C.S.A 3126(a)(1) is a "crime of violence" under the test set forth in Begay.

### b. The Modified Categorical Approach

It is possible that a person could violate section 3126(a)(1) in a manner that does not necessarily involve violence or aggression. Viewing the statute as covering both conduct that would fall within and outside the Guidelines definition of "crime of violence" requires us to use the "modified categorical approach" as set forth by the Court of Appeals for the Third Circuit in Siegel and thus "invites inquiry into the underlying facts of the case." Siegel, 477 F.3d at 92.

While it is possible that a person could commit indecent assault without violence we find that the "typical" violation of 3126(a)(1) will involve purposeful, violent, and aggressive conduct. As the Siegel Court did, we rely on the description of the indecent assault conduct set forth in the PSR to which Mr. Brown did not object. 477 F.3d at 93. The description of the offense shows that Mr. Brown's conduct in committing the offense was purposeful, violent, and aggressive. Thus, under the modified approach we also conclude that Mr. Brown's prior conviction is a "crime of violence" under section 4B1.2(a).[1]

**(2) No Miscarriage of Justice**

When ruling on a § 2255 petition, the Court may address the prejudice prong first "and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced." Rolan v. Vaughn, 455 F.3d 671, 678 (3d Cir. 2006). To establish prejudice, the movant must show that "there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." Id. Had counsel timely challenged Mr. Brown's prior indecent assault conviction as a "crime of violence", the challenge would have been denied. Because Mr. Brown cannot establish that he was prejudiced by his counsel's errors, his claim of ineffectiveness fails.

Because Mr. Brown was not prejudiced by counsel's ineffectiveness, we find that enforcing the collateral attack waiver in Mr. Brown's plea agreement does not result in a miscarriage of justice. Having found that Mr. Brown knowingly and voluntarily waived his right

---

[1] Mr. Brown suggests that indecent assault is not a "crime of violence" because it can be committed recklessly with respect to the victim's consent. This argument is unpersuasive for two reasons. First, the "indecent contact" required by the statute cannot be committed recklessly; it requires a purposeful touching. Second, assuming that the offense can be committed recklessly invites inquiry into the underlying facts of the case, which, as explained in the body of the opinion, show that Mr. Brown's conduct was purposeful, violent, and aggressive.

17

to file a collateral attack of his sentence and conviction, and that enforcement of the waiver does not work a miscarriage of justice, we will deny Mr. Brown's petition.

### (3) Certificate of Appealability

The remaining issue before this Court is whether a certificate of appealability should be issued with respect to Mr. Brown's motion to vacate. A court should issue a certificate of appealability where a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Slack v. McDaniel, 529 U.S. 473, 484 (2000). We find that jurists of reason would not find it debatable whether Mr. Brown states a valid claim of the denial of a constitutional right and jurists of reason would not find it debatable whether we were correct in concluding that the petition does not present any claims upon which habeas relief may be granted. Therefore, the Court will deny a certificate of appealability.

## IV. Conclusion

Mr. Brown's 28 U.S.C. § 2255 motion will be denied, and a certificate of appealability will not be issued.

An appropriate order will be entered.

Date: July 27, 2010

Maurice B. Cohill, Jr.
United States District Court Senior Judge